IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AIP ACQUISITION LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 12-616 GMS |
| IBASIS, INC., | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM

### I. INTRODUCTION

On May 17, 2012, the plaintiff, AIP Acquisition LLC ("AIP"), initiated this action against the defendant, iBasis, Inc. ("iBasis"), accusing iBasis of infringing five United States Patents. (D.I. 1.) Presently before the court is iBasis' motion to transfer venue to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a). (D.I. 10.) For the reasons that follow, the court will deny iBasis' motion to transfer.

### II. BACKGROUND

AIP is a limited liability company organized under Delaware law, with its principal place of business in Fort Lee, New Jersey. (D.I. 1 at ¶ 1.) iBasis is a Delaware corporation, with its principal place of business in Burlington, Massachusetts. (*Id.* at ¶ 2.)

The members of AIP are former shareholders of Arbinet Corporation ("Arbinet"), a voice and data communications service provider. (*Id.* at ¶ 7.) After Arbinet was acquired by another entity in 2010, a majority of its shareholders organized AIP and acquired Arbinet's patent portfolio, including the five patents in suit. (*Id.* at ¶ 9–10.) AIP then brought this suit, contending that iBasis provides a number of communications services that infringe these patents.

1

(*Id.* at ¶ 17–23.) On July 27, 2012, iBasis filed this motion to transfer venue to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a). (D.I. 10.)

## III. STANDARD OF REVIEW

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This provision "was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).

Section 1404(a) establishes a two-step transfer analysis. The court first asks whether the action could have been brought in the proposed transferee venue and then determines whether transfer to a different forum would best serve the interests of justice and convenience. *Mitek Sys., Inc. v. United Servs. Auto Ass'n*, No. 12-462-GMS, 2012 WL 3777423, at *4 (D. Del. Aug. 20, 2012). The burden rests with the defendant to demonstrate that transfer is appropriate at each step, *Jumara*, 55 F.3d at 879–80, and, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail," *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

## IV. DISCUSSION

A. Propriety of the Transferee Venue

Section 1404(a) permits the court to transfer an action to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As such, the court may only order transfer to the District of Massachusetts if venue would have been proper there and if that district

2

court could have exercised personal and subject matter jurisdiction over this action. 17 James Wm. Moore et al., *Moore's Federal Practice* § 111.12[b] (3d ed. 2012).

AIP does not contest that it could have brought this action in the District of Massachusetts. As noted above, iBasis has its principal place of business in Burlington, Massachusetts. (D.I. 1 at ¶ 2.) Accordingly, personal jurisdiction would not present a problem. *See Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 196 (D. Del. 1998). Additionally, a District of Massachusetts court would have subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), and venue would be appropriate under 28 U.S.C. §§ 1391(b) and 1400(b). Since AIP could have brought this action in the proposed transferee venue, the court turns to the second prong of the analysis.

B. *Jumara* Factors

The next step of the § 1404(a) transfer inquiry invites the court to determine "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Mitek Sys., Inc.*, 2012 WL 3777423, at *4 (internal quotation omitted). In *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995), the Third Circuit instructed courts to consider the various private and public interests protected by § 1404 rather than to any "definitive formula."[1] 55 F.3d at 879. These private interests may include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* The public interests may include:

---

[1] The law of the Third Circuit governs this court's decision on a motion to transfer pursuant to 28 U.S.C. § 1404(a). *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1222–23 (Fed. Cir. 2011) ("In reviewing a district court's ruling on a motion to transfer pursuant to § 1404(a), we apply the law of the regional circuit . . . .").

3

the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80. The court addresses each of these "*Jumara* factors" in turn.

    1.    Private interest factors

        a.  Plaintiff's forum preference

The first private interest factor is the "plaintiff's forum preference as manifested in the original choice." *Jumara*, 55 F.3d at 879. As a general matter, the court accords substantial deference to this forum decision. *Shutte*, 431 F.2d at 25 ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice 'should not be lightly disturbed.'"). The plaintiff's preference, however, is not "effectively dispositive of the transfer inquiry," and the court accords this factor less weight in certain situations. *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011); *see also Mitek Sys., Inc.*, 2012 WL 3777423, at *4. Specifically, the Federal Circuit has warned that "[w]hen a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference." *In re Link_A_Media*, 662 F.3d at 1223. Since AIP's principal place of business is in New Jersey and not Delaware, iBasis argues that its Delaware forum selection is entitled to less weight than ordinary. (D.I. 11 at 11.) While AIP does not dispute that it is based in New Jersey, it emphasizes that it is organized under the laws of Delaware. (D.I. 13 at 14.)

Just as the court has observed that a corporate entity's state of incorporation is part of its "home turf," *Mitek Sys., Inc.*, 2012 WL 3777423, at *5; *Intellectual Ventures I v. Altera Corp.*, 842 F. Supp. 2d 744, 759 (D. Del. 2012), it recognizes that a limited liability company, like AIP,

4

may rightfully consider its state of organization to be its "home forum." The court thus accords AIP's decision to litigate in Delaware, its state of organization, heightened deference in the § 1404(a) analysis.[2] *See Mitek Sys., Inc.*, 2012 WL 3777423, at *5. This deference, however, does not rise to the level that AIP's selection would have merited had AIP chosen to bring this action in the state of its principal place of business. *See id.* As such, this factor counsels against transfer and is given heightened, but not maximum, weight.

### b. Defendant's forum preference

The second *Jumara* private interest factor is the defendant's forum preference. 55 F.3d at 879. Here, iBasis has expressed a desire for this action to proceed in the District of Massachusetts, where it maintains its principal place of business. (D.I. 11.) This fact weighs in favor of transfer.

### c. Whether claims arose elsewhere

The court next considers where AIP's claims arose. *Jumara*, 55 F.3d at 879. "[A]s a matter of law, a claim for patent infringement arises wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35 U.S.C. § 271(a)). Accordingly, when the defendant in a patent infringement action operates on a national or global level, this factor is generally neutral. The court also recognizes, however, that "[t]o some extent, the claims ar[i]se where the allegedly infringing products [a]re

---

[2] iBasis relies heavily on *Signal Tech, LLC v. Analog Devices, Inc.*, No. 11-1073-RGA, 2012 WL 1134723 (D. Del. Apr. 3, 2012), in arguing that AIP's organization under Delaware law merits less deference because AIP was formed only sixteen months before commencing this action. (D.I. 11 at 11.) This reliance is misplaced. In *Signal Tech*, Judge Andrews did find that the recently incorporated plaintiff was "the equivalent of not being a Delaware corporation," 2012 WL 1134723, at *4, and, as such, determined that "plaintiff's choice of forum . . . [was] not entitled to 'paramount' consideration," *id.* at *5. It appears, however, the *Signal Tech* court reached these conclusions on the basis of statements made by plaintiff's counsel at oral argument that the plaintiff "had no claim on Delaware as a venue based on its incorporation." *Id.* at *2. AIP has made no such statements in this case and is entitled to be treated as a Delaware company.

5

designed and manufactured." *Wacoh Co. v. Kionix, Inc.*, 845 F. Supp. 2d 597, 602 (D. Del. 2012). Since the products relevant to this litigation "were designed and developed primarily in Massachusetts," the court finds that this factor weighs slightly in favor of transfer. (D.I. 11 at 13.)

### d. Convenience of parties

The fourth *Jumara* private interest factor is the "convenience of the parties as indicated by their relative physical and financial condition." 55 F.3d at 879. In assessing this factor, courts have traditionally looked to several elements, including "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Fuisz Pharma v. Theranos, Inc.*, No. 11-1061-SLR-CJB, 2012 WL 1820642, at *12 (D. Del. May 18, 2012), *recommendation accepted*, 2012 WL 2090622 (D. Del. June 7, 2012).

iBasis argues that Massachusetts provides a more convenient forum based on the physical location of the parties. (D.I. 11 at 13–14.) As noted above, iBasis operates out of Massachusetts while AIP is located in New Jersey, between this district and Massachusetts. (*Id.*) AIP responds that, if the court accounts for the relative financial conditions of the parties and the fact that iBasis is actually a Delaware corporation, this state emerges as the most convenient forum. (D.I. 13 at 18–19.)

The court agrees with AIP on this point. While it is true that, taken alone, the parties' physical locations may suggest that Massachusetts is more convenient,[3] the court's analysis does

---

[3] The court observes, however, that AIP's New Jersey headquarters is approximately seventy miles closer to Wilmington, Delaware than it is to Boston, Massachusetts, potentially making it much more convenient for AIP to litigate in this district. (D.I. 13 at 10.) While the court's analysis of this *Jumara* factor is driven by the separate

6

not conclude there. The financial resources disparity between the parties is such that the court believes compelling AIP to litigate in Massachusetts would be more onerous than requiring iBasis to remain in Delaware.[4] Moreover, the court finds it significant that iBasis is a Delaware corporation and has necessarily consented to suit in this jurisdiction. "Absent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient." *Intellectual Ventures I*, 842 F. Supp. 2d at 756. For these reasons, the court finds that this factor weighs against transfer.

e. Convenience of witnesses

The court next considers "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. iBasis contends that at least three potential witnesses are beyond the subpoena power of the court.[5] (D.I. 11 at 15–16.) AIP points out, however, that the inventors of four of the five patents at issue in this case are subject to the subpoena power of this court and not the District of Massachusetts. (D.I. 13 at 21.) As each of the proposed fora lacks subpoena power over

---

considerations discussed below, the court notes here that it cannot agree with iBasis' conclusion that AIP is "approximately equidistant from Delaware and Massachusetts." (D.I. 11 at 17.)

[4] AIP emphasizes that, while it has revenue since its inception of only $11,000, (D.I. 13 at 19), iBasis' annual 2011 revenue was approximately $1.2 billion, (*Id.* at 10.) iBasis disputes this report on two levels, arguing that AIP has both overestimated iBasis' financial resources and underrepresented its own. (D.I. 17 at 9–10.) On this latter point, iBasis reminds the court that AIP purchased the patent portfolio containing the patents in suit from Arbinet for $4 million and initiated several patent infringement actions in this district on the same day. (*Id.* at 9.) iBasis argues that AIP thus appears to be a "well-funded [non-practicing entity] with significant resources devoted exclusively to litigation." (*Id.*) While this may be true and the relative financial conditions of the parties may not be quite as lopsided as AIP represents, the court will not wholly ignore AIP's financial argument. Even if AIP's primary business is litigation, there is no reason to believe that it can devote resources to that task sufficient to keep pace with iBasis. While iBasis contends that its 2011 EBITDA of approximately $39 million paints a more accurate picture of its financial strength, even that number towers over AIP's patent spending and reported revenue.

[5] iBasis argues that it is likely to require testimony from its two co-founders, who left iBasis in 2009 but were involved in the development of the relevant products and may have information related to invalidity and non-infringement. (D.I. 11 at 15.) iBasis also suggests that it may call its former Senior Vice President of Worldwide Sales, who left the company in 2007. (*Id.* at 15–16.) Each of these potential witnesses are believed to reside in Massachusetts. (*Id.*)

7

potential third-party witnesses whom the court reasonably anticipates will be averse to testifying, this factor weighs neither for nor against transfer.[6]

### f. Location of books and records

The final private interest factor is "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *see also Mitek Sys., Inc.*, 2012 WL 3777423, at *6.

Here, iBasis maintains the relevant documents, books, and records in Massachusetts, suggesting that this consideration favors transfer to that forum. (D.I. 11 at 16.) AIP argues, however, that this factor should be disregarded given the ease with which modern technology allows documents to be stored and transferred. (D.I. 13 at 22.) While the court acknowledges that technological advancements have significantly reduced the weight to be accorded this factor, *see Mitek Sys., Inc.*, 2012 WL 3777423, at *6; *Fuisz Pharma*, 2012 WL 1820642, at *15, the court may not simply ignore the location of relevant books and records, *see In re Link_A_Media Devices Corp.*, 662 F.3d at 1224. As such, the court finds that this factor weighs ever so slightly in favor of transfer.

### 2. Public interest factors

---

[6] The parties dispute whether a court may grant any weight to this factor absent "some indicia that but for a subpoena the witness will not testify." (D.I. 13 at 20.) AIP argues that it is not enough merely to show that a witness resides beyond a court's subpoena power—there must be reason to believe that the witness actually will not testify. (*Id.*) iBasis contends that no such showing is necessary and that the touchstone inquiry is whether the witness is subject to subpoena. (D.I. 17 at 11.) The court agrees with AIP that this factor only matters where there is some reason to believe that a witness actually will refuse to testify absent a subpoena. *See Acuity Brands, Inc. v. Cooper Indus., Inc.*, No. 07-444-GMS, 2008 WL 2977464, at *2 (D. Del. July 31, 2008). Both parties, however, have made such a showing—iBasis points to a former senior manager whose departure (to join Arbinet) apparently was less than amicable, and AIP advises the court of non-party inventors whose sheer distance from Boston makes their willing testimony unlikely. (D.I. 13 at 10; D.I. 17 at 11–12.)

8

While most of the *Jumara* public interest factors are neutral or inapplicable in this case, the parties dispute the significance of two factors: the "practical considerations that could make the trial easy, expeditious, or inexpensive" and "the public policies of the fora." *Jumara*, 55 F.3d at 879. The court now addresses each in more detail.

### a. Practical considerations

*Jumara* instructs the court to weigh "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. On this point, iBasis contends that "it would be substantially less expensive and more convenient for iBasis to litigate this matter [in Massachusetts,] where its operations, employees and documents are located." (D.I. 11 at 17.) iBasis further suggests that transfer to Massachusetts would have little effect on AIP's expenses, as AIP's principal place of business rests in between Delaware and Massachusetts. (*Id.*) On the other hand, AIP argues that the "practical considerations" factor actually counsels against transfer because of related litigation currently proceeding in the District of Delaware. (D.I. 13 at 23–24.)

The court agrees with AIP that this factor weighs against transfer. While iBasis may be correct in its assumptions regarding the parties' combined litigation expenses, the "practical considerations" factor demands an examination of the broader public costs of transfer. Here, the fact that there is another case currently pending before the court involving AIP and the same patents, suggests that retention of this case would best serve judicial economy.[7] *See, e.g.*, *Mitek Sys., Inc.*, 2012 WL 3777423, at *7; *Intellectual Ventures I*, 842 F. Supp. 2d at 759. Permitting the two cases to proceed in the same court could minimize costs to the judicial system as a whole, by requiring that only one court become familiar with the relevant technology. As such, the court finds that this factor weighs against transfer.

---

[7] The related case is *AIP Acquisition LLC v. Level 3 Communications, LLC*, No. 12-617-GMS.

9

b.  Public policies of the fora

Finally, the court must consider the "the public policies of the fora." *Jumara*, 55 F.3d at 879. AIP contends that transferring this case would contradict Delaware's public policy, which favors adjudicating disputes between corporations of this state. (D.I. 13 at 24.) The court agrees with this assessment, as "[t]he public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for the resolution of business disputes." *Wacoh Co.*, 845 F. Supp. 2d at 604; *see also Intellectual Ventures I*, 842 F. Supp. 2d at 760. While this factor is of minimal importance, *Intellectual Ventures I*, 842 F. Supp. 2d at 760, it does weigh against transfer, as both AIP and iBasis are companies organized under Delaware law.

C.  Transfer Analysis Conclusion

Considering the *Jumara* factors as a whole, the court finds that iBasis has failed to meet its burden of demonstrating that the interests of convenience strongly favor transfer. While the private interest analysis is mixed and three factors do recommend transfer, the court gives only minimal weight to two of them.[8] Moreover, the public interest analysis weighs decidedly against transfer—every factor is either inapplicable, neutral, or favors keeping this action in Delaware. The court cannot find that iBasis has satisfied its heavy burden and therefore declines to transfer this matter to the District of Massachusetts.

V.  **CONCLUSION**

For the foregoing reasons, the court will deny iBasis' motion to transfer to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a).

Dated: October 19, 2012

CHIEF UNITED STATES DISTRICT JUDGE

---

[8] As discussed above, the court gives only minimal weight, in this case, to the *Jumara* factors considering where the claims arose and where the relevant books and records are located.

10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AIP ACQUISITION LLC,

    Plaintiff,

v.

IBASIS, INC.,

    Defendant.

Civil Action No. 12-616 GMS

**ORDER**

At Wilmington this 19th day of October 2012, consistent with the memorandum opinion issued this same date, IT IS HEREBY ORDERED THAT:

The defendant's Motion to Transfer Venue (D.I. 10) be DENIED.

_____
CHIEF, UNITED STATES DISTRICT JUDGE